NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0106n.06

**Nos. 18-5378/5386**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

IN RE: FAYE FOODS, INC.,

      Debtor.

_____

MICHAEL E. COLLINS,

      Plaintiff-Appellee/Cross-Appellant,

v.

TENNESSEE DEPARTMENT OF REVENUE,

      Defendant-Appellant/Cross-Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 06, 2019
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF TENNESSEE

---

**BEFORE: DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** This appeal arises from a Chapter 11 bankruptcy with a lengthy procedural history. Three years after the bankruptcy of debtor corporation Faye Foods ended, the Tennessee Department of Revenue ("TDOR") levied on Faye Foods's account for post-petition taxes for which Faye Foods filed tax returns but did not pay.

There are two separate, cross-appealed issues in this case. TDOR appeals the bankruptcy court's determination that the statute of limitations barred recovery of most of the taxes imposed. The parties disagree on whether the applicable statute of limitations, which requires that taxes be levied within six years after they are assessed, was tolled during the bankruptcy. All but two of the tax claims were assessed more than six years before the levy was imposed, so if the statute of limitations was not tolled, the levy was time-barred for most of the taxes. Under *de novo* review,

we affirm the bankruptcy court's decision that TDOR issued the levy outside the applicable statute of limitations for most of the taxes in question.

Meanwhile, Collins appeals the bankruptcy court's decision declining to impose sanctions on TDOR. We find the bankruptcy court did not abuse its discretion and affirm its denial of sanctions.[1]

I.

A.

Faye Foods filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on February 28, 2005. During the bankruptcy, but before a bankruptcy Trustee was appointed, Faye Foods incurred post-petition Tennessee state taxes for which it filed tax returns but did not pay. Michael Collins ("Collins") was appointed Trustee on June 23, 2011.[2]

The bankruptcy court approved Collins's amended Chapter 11 reorganization plan ("the Plan"), which detailed how debts would be paid, on September 21, 2012 in its Amended Order of Confirmation. The Amended Order of Confirmation specified that applications for allowances of administrative claims be filed within sixty days after the entry of the Amended Order.[3] The Plan also stated that administrative claims "shall be paid in full on the later of (1) the Effective Date, (2) ten days after such claim is allowed by the Bankruptcy Court, and (3) the date such claim is

---

[1] Collins also argues for the first time on appeal that even if we determine TDOR sanctions are not warranted, we should still award interest and attorney's fees under Tenn. Code Ann. § 67-1-1803. As a threshold matter, this argument was forfeited on appeal since it was not presented to the bankruptcy court or the district court. *Hood v. Tenn. Student Assistance Corp. (In re Hood)*, 319 F.3d 755, 760 (6th Cir. 2003).

[2] By the time the district court issued its order affirming the decision of the bankruptcy court in March 2018, Collins was no longer the Trustee. Under the Plan, Collins was discharged as Trustee but appointed to serve in the capacity of Post-Conformation Distribution Agent, a position in which he continues to serve.

[3] Under bankruptcy law, administrative claims are given priority status for repayment and include the costs of preserving the estate and any taxes incurred by the estate. 11 U.S.C. § 503(b)(1)(B). To receive priority status, most creditors file a request for payments of administrative claims. 11 U.S.C. § 503(a).

due and payable pursuant to the agreement or law under which the claim arises." 05-23072 Bankr. Ct. 486, Trustee's Amended Plan ("the Plan"), Section II(A)(3).

The "effective date" of the reorganization was October 1, 2012. From the filing of the bankruptcy petition to the "effective date" of October 1, 2012, the bankruptcy case lasted for over seven years. On February 14, 2013, the court entered the Final Decree, which officially closed the bankruptcy case.

On October 4, 2012, TDOR filed its "POST PETITION PRIORITY TAX CLAIM" for $34,821.97 in post-petition taxes incurred but not paid during the bankruptcy. TDOR did not file a separate motion or application for allowance of the claim. Neither Faye Foods nor Collins objected to TDOR's claim.

The applicable statute sets a six-year statute of limitations to collect—or levy—taxes, running from the date the taxes were assessed. Tenn. Code Ann. § 67-1-1429(a)(1)(A). Under Tennessee law at the time, tax liabilities were "assessed" on the date TDOR recorded the liabilities. Tenn. Code Ann. § 67-1-1438(b) (2005-2014). According to TDOR's claim, the at-issue tax liabilities were:

| Tax Period | Tax Type | Amount | Date Liability Recorded |
|---|---|---|---|
| 10/1/05–10/31/05 | Sales and Use | $11,979.32 | 12/2/05 |
| 11/1/05–11/30/15 | Sales and Use | $630.79 | 12/20/05 |
| 3/1/06–3/31/06 | Sales and Use | $447.38 | 4/26/06 |
| 3/1/06–3/31/06 | Sales and Use | $378.75 | 4/26/06 |
| 7/1/06–7/31/06 | Sales and Use | $590.82 | 8/25/06 |
| 1/1/07–12/31/07 | Franchise and Excise | $18,688.59 | 9/26/12 |
| 9/1/07–9/30/07 | Sales and Use | $500.00 | 10/24/07 |
| 9/1/07–9/30/07 | Sales and Use | $948.19 | 10/24/07 |
| 10/1/07–10/31/07 | Sales and Use | $448.01 | 11/27/07 |
| 1/1/09–12/31/09 | Franchise and Excise | $210.12 | 4/21/10 |
| | | $34,821.97 | |

05-23072 Bankr. Ct. 579, Order, at 5.

Faye Foods made no payment on the TDOR claim. TDOR sent a notice of default letter to Faye Foods on July 1, 2015—approximately three years after TDOR filed the initial claim. On October 14, TDOR sent Faye Foods a notice of intent to levy for multiple tax claims. According to TDOR, a TDOR representative spoke with a Faye Foods representative on October 9 about the outstanding taxes TDOR believed were due. Again, Faye Foods did not pay.

On October 20, 2015, TDOR issued a levy notification to BanCorp South—the bank at which Faye Foods had its operating account—for the post-petition tax claims, which by that point totaled $38,965.06. Bancorp froze Faye Foods's operating account and delivered $38,965.06 to TDOR.[4] Collins asserted that, as a result of the levy, the owners of Faye Foods had to take out a short-term, personal loan to cover operating expenses and that Faye Foods struggled to meet its other financial obligations.

B.

Collins responded to the levy by filing an emergency motion for sanctions in bankruptcy court against TDOR, arguing that TDOR untimely filed the levy and that TDOR's actions were sanctionable. The bankruptcy court initially denied Collins's motion and he appealed to the district court. On remand, the bankruptcy court entered an order, consistent with the decision of the district court, that the statute of limitations was not tolled by statute or equitable principles during the bankruptcy case so TDOR's levy was untimely for most of the taxes in question. The bankruptcy court determined that the statute of limitations had not run for $210.12 of the total amount levied, so this amount was properly collected. TDOR thus owed $23,070.52 to Faye Foods.

---

[4] As a result of Faye Foods filing an amended tax return and upon demand by the Trustee, TDOR later returned $7,000.

The bankruptcy court also denied Collins's motion for sanctions against TDOR. In relevant part, Collins argued that sanctions were warranted because TDOR knowingly and intentionally violated the discharge injunction by levying the taxes at issue on Faye Foods's bank account. Collins argued that the Plan required TDOR to file an application or request for payment, in addition to filing the post-petition tax claim, and TDOR had not done so. By failing to file a request for payment, Collins argued, TDOR failed to preserve its administrative tax claim. Accordingly, the post-petition taxes for which the levy was issued were discharged and TDOR was enjoined from collecting on its tax claim under the discharge injunction, which is referenced under the discharge and injunction sections of the Plan and enjoins creditors from collecting discharged debts. *See* 11 U.S.C. § 524(a)(2). Therefore, Collins contended that TDOR knowingly and intentionally violated the terms of the discharge injunction, so sanctions were warranted. The bankruptcy court rejected this argument, finding that there was no sanctionable conduct and that it lacked jurisdiction because there was no violation of the discharge injunction.

The parties cross-appealed to the district court. On second appeal, the district court affirmed the decision of the bankruptcy court. As to sanctions, the district court found that resolving the jurisdictional issue was unnecessary because there was no sanctionable conduct.

## II.

"When we review appeals from the decisions of a district court in a case originating in bankruptcy court, our standard of review is somewhat different than normal. We directly review the decision of the bankruptcy court rather than the district court's review of the bankruptcy court's decision." *Poss v. Morris (In re Morris)*, 260 F.3d 654, 662 (6th Cir. 2001). TDOR is challenging the bankruptcy court's ruling that the six-year statute of limitations within which it could collect unpaid taxes was not tolled while the automatic stay was in place. Statutory interpretation is a

question of law which we review *de novo*. *Made In Detroit, Inc. v. Official Comm. of Unsecured Creditors of Made In Detroit, Inc. (In re Made in Detroit, Inc.)*, 414 F.3d 576, 580 (6th Cir. 2005); *Koenig Sporting Goods, Inc. v. Morse Road Co.* (*In re Koenig Sporting Goods, Inc.*), 203 F.3d 986, 988 (6th Cir. 2000).

For the sanctions issue, we review the bankruptcy court's decision for abuse of discretion. *See Maloof v. Level Propane Gasses, Inc.*, 316 F. App'x 373, 375 (6th Cir. 2008) (collecting authority). A court abuses its discretion when it makes an unreasonable decision by acting contrary to law or relying upon erroneous facts. *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 480 (6th Cir. 1996).

III.

To determine whether the statute of limitations and tolling provision apply to TDOR's levy, we must analyze a web of interlocking Tennessee statutes and federal bankruptcy law. Under Tennessee law, the state has six years to collect taxes via levy, beginning on the date that the taxes are recorded. Tenn. Code Ann. § 67-1-1429(a)(1)(A) (2005-2014). TDOR claims that the statute of limitations does not apply; but if it does apply, it was statutorily tolled under Tenn. Code Ann. § 28-1-109, which extends the statute of limitations during the time that an injunction prevents a party from filing an action. According to TDOR, the automatic stay in the bankruptcy case was an injunction that prevented TDOR from collecting taxes until October 1, 2012, the "effective date" of the bankruptcy plan on which the stay expired. Therefore, TDOR argues, the statute of limitations was tolled and the levy it executed in October 2015 was timely.

In response, Collins again argues that the tolling provision—Tenn. Code Ann. § 28-1-109—does not apply to TDOR because another section of Title 28—Tenn. Code. Ann. § 28-1-113—states that the provisions of Title 28 do "not apply to actions brought by the [S]tate of

Tennessee, unless otherwise expressly provided." Collins asserts that nothing in Title 28 "expressly provides" the benefit of the tolling provision to the State. Accordingly, Collins argues, the bankruptcy court correctly held, pursuant to the district court's order on remand, that the State is subject to the statute of limitations in Title 67, but not the tolling provision in Title 28.

We conclude that the TDOR levy was barred by the statute of limitations because the statute of limitations applies to the State, the tolling provision does not apply to the State, and the statute of limitations was not equitably tolled. Accordingly, we affirm the decision of the bankruptcy court on this issue.

## A.

TDOR initially contends that the six-year statute of limitations (Tenn. Code Ann. § 67-1-1429(a)(1)(A) (2005-2014)) does not apply to actions brought by the State. TDOR claims that the "well-established" legislative history of Tenn. Code Ann. § 28-1-113 (the "exclusionary provision") shows that the purpose of the section was to codify the common-law maxim "time does not run against the king," so the State is not subject to the statutes of limitations unless "expressly provided." CA6 R. 22, Appellant First Br., Page ID 17 (citing *Anderson Cty. Bd. of Educ. v. Nat'l Gypsum Co.*, 821 F.2d 1230, 1232 (6th Cir. 1987). Practically, TDOR argues, Tenn. Code Ann. § 28-1-113 means that the state is not subject to the *statute of limitations* in Title 67 unless expressly provided; it does not mean that the *tolling* provision in Title 28 does not apply to the state.

TDOR is incorrect. The statute of limitations clearly and unambiguously applies to the State, so we need not address the legislative history of the exclusionary provision. The statute of limitations provides:

(a) LENGTH OF PERIOD

    (1) Where the assessment of any tax imposed by this or any other title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun:

    (A) Within six (6) years after assessment of the tax[.]

Tenn. Code Ann. § 67-1-1429(a)(1)(A) (2005-2014).

Though the Tennessee Supreme Court has explained that "statutes of limitation are looked upon with disfavor in actions brought by the State, and will not be enforced in the absence of clear and explicit statutory authority to do so," *Hamilton County Board of Education v. Asbestospray Corp.*, 909 S.W.2d 783, 785 (Tenn. 1995), "[t]his substantive canon of construction has typically been applied in instances where it is unclear *from the text of a statute of limitations itself* whether it applies to the state." *In re Estate of Tanner*, 295 S.W.3d 610, 628 (Tenn. 2009) (emphasis added and footnote omitted).

Here, there is "clear and explicit authority" from the text of the Code itself that the statute of limitations is enforceable against TDOR. The Tennessee Code sets a six-year period in which taxes can be levied after they are assessed. Tenn. Code Ann. § 67-1-1429(a)(1)(A) (2005-2014). The plain language of the statute "clearly expresses" that the six-year statute of limitations is enforceable against the State because the State, via TDOR, is the entity that records, collects, and levies taxes. Further, Title 67 includes no provision that would exclude the State from the statute of limitations. Given the unambiguous, plain language of the statute, we need not further question the intent of the Tennessee legislature.

### B.

Alternatively, TDOR recognized below and again on appeal that the State "expressly burdened itself with a statute of limitations" in such cases. *See* CA6 R. 22, Appellant First Br., Page ID 17. Here, TDOR claims that if the statute of limitations applies to the State, the State is

also entitled to the benefit of the tolling provision (Tenn. Code Ann. § 28-1-109). We conclude, however, that the statutory tolling provision does not apply to actions by the State. The statute of limitations was therefore not tolled.

To support its argument, TDOR relies upon *State ex rel. Grant v. Progais*, 979 S.W.2d 594 (Tenn. 1997). But the facts of *Grant* are not helpful to TDOR. In *Grant*, a father was sued to establish paternity and for retroactive child support. *Id.* at 595. The State appeared to be the petitioner in some of the original filings to the trial court, but "by a series of changes in caption, the mother became the petitioner" in later filings. *Id.* at 600. The father contended that the statute of limitations time-barred the right of action for retroactive child support. *Id.* at 601. The court never clarified if the State was actually a party, but it held that the status of the child as a minor at the time the suit was initiated tolled the statute of limitations and awarded retroactive support to the mother with the remainder to the child. *Id.* at 602. Therefore, *Grant* did not establish that the State was even a party, nor did it hold that the State is entitled to tolling because a statute of limitations applied.

In contrast, the Tennessee Supreme Court's analysis in *Dunn v. W.F. Jameson & Sons, Inc.* indicates the State is excluded from the Title 28 tolling provision. 569 S.W.2d 799 (Tenn. 1978). The *Dunn* court addressed whether the statute of limitations for property tort claims was applicable to the State when another provision in the same title stated: "The provisions of this title do not apply to actions brought by the [S]tate of Tennessee, unless otherwise expressly provided." *Id.* at 801. Relying on the plain language of the Tennessee Code, the *Dunn* court held that the State was not bound by the statute of limitations. *Id.* The exclusionary provision in the *same* title applied to the title as a whole, including the statute of limitations, and "there is nowhere an express provision

making [the statute of limitations] applicable to an action by the State." *Id.* Therefore, the *Dunn* court found, the statute of limitations "simply and clearly" does not apply to the State. *Id.*

Here, as in *Dunn*, the statutory language is unambiguous. *In re Koenig Sporting Goods, Inc.*, 203 F.3d at 988 ("The starting point in interpreting a statute is its language . . . . When a statute is unambiguous, resort to legislative history and policy considerations is improper." (internal citations omitted)). The exclusionary provision (Tenn. Code Ann. § 28-1-113) is found in the same title of the Code as the tolling provision (Tenn. Code Ann. § 28-1-109)—Title 28. The exclusionary provision provides that the provisions of "this title do not apply to actions brought by the [S]tate of Tennessee unless expressly provided." Application of the tolling provision to the State is not "expressly provided" in Title 28. Therefore, the State does not have the benefit of the tolling provision.

In contrast, the statute of limitations is found in Title 67. Because the Title 28 exclusionary provision is not found in the same title as the statute of limitations, the State is not excluded from the statute of limitations. Therefore, the State is bound by the statute of limitations.

For these reasons, we agree with the bankruptcy court that TDOR is subject to the statute of limitations found in Title 67 but is excluded from the tolling provision of Title 28, so the statute of limitations was not tolled.

## C.

Lastly, TDOR argues that the statute of limitations should be extended by two equitable principles: equitable tolling and equitable estoppel. Neither of these equitable doctrines is available because TDOR did not act diligently in pursuing its claim.

The "effective date" of the Plan was October 21, 2012. The term "effective date" is not defined in the Bankruptcy Code, but it is commonly understood as the date on which the plan goes

into effect, which means the debtor begins implementing the plan and making payments to creditors. *See, e.g.*, *In re Potomac Iron Works, Inc.*, 217 B.R. 170, 172 (Bankr. D. Md. 1997) ("Effective date is . . . the point in time when the plan can and should be susceptible of implementation and commencement of the operation of its provisions. The date is important to claimants and interest holders because of the distribution to them of value whether it is money or other property." (quoting Benjamin Weintraub & Michael J. Crames, *Defining Consummation, Effective Date of Plan of Reorganization and Retention of Postconfirmation Jurisdiction: Suggested Amendments to Bankruptcy Code and Bankruptcy Rules*, 64 Am. Bankr. L.J. 245, 276 (1990))). Therefore, TDOR should have received a distribution from the estate on the "effective date." *See* 11 U.S.C. § 1129(a)(9)(A) (stating that a bankruptcy plan may only be confirmed if it provides for cash payments of administrative expense claims, including post-petition taxes, to be disbursed on the effective date of the plan); 11 U.S.C. § 507(a)(2) (noting the priority of administrative expenses); 11 U.S.C. § 503(b)(1)(B) (categorizing taxes as administrative expenses). TDOR did not receive a distribution on the effective date itself or for multiple years after the effective date. Yet TDOR waited three years after the effective date—until October 20, 2015—to levy the post-petition taxes.

First, TDOR contends if the statute of limitations applies, it should be equitably tolled because the automatic stay prevented TDOR, through no fault of his own, from collecting on the tax debt during the bankruptcy. But equitable tolling should be used "sparingly" in "extreme cases" when the failure to invoke equitable tolling would result in "unacceptably unjust outcomes." *Whitehead v. State*, 402 S.W.3d 615, 626 (Tenn. 2016).[5] "The applicability of equitable tolling is

---

[5] The district court determined that Tennessee is unique in not recognizing equitable tolling in civil proceedings. TDOR contends that this is not a civil case—it is a bankruptcy case—and bankruptcy courts are courts of equity in which equitable principles are available. The cases to which TDOR cites seem to indicate that equitable tolling is available in bankruptcy proceedings. *See Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re*

a fact based decision and, consequently, the bankruptcy court determines whether equitable tolling governs in any given case." *Slone v. Anderson (In re Anderson)*, 511 B.R. 481, 498 (Bankr. S.D. Ohio 2013) (internal quotation marks omitted), *aff'd*, 510 B.R. 113 (B.A.P. 6th Cir. 2014). The facts here weigh strongly against the applicability of equitable tolling because TDOR does not present compelling equitable rationales for its failure to pursue its claim diligently.

Second, TDOR argues again on appeal that Collins should be equitably estopped from raising a statute-of-limitations defense. Equitable estoppel is grounded in the idea "that no person may take advantage of his or her own wrong . . . . [T]he doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012). Tennessee law explains the elements of equitable estoppel as follows:

> Where by promises or appearances one party is induced to believe that the other party is going to pay a claim or otherwise satisfy the claims of the first party, and in reliance on that representation the first party delays filing suit within the applicable statute of limitations, the party making the representations may be estopped to raise the statute of limitations as a defense.

*Sparks v. Metro. Gov't of Nashville & Davidson Cty.*, 771 S.W.2d 430, 433 (Tenn. Ct. App. 1989). In other words, a party asserting equitable estoppel must show (1) intentional representation by the opposing party; (2) reasonable reliance upon that representation; and (3) diligent action to pursue its claims "both before and after the [opposing party] induced [it] to refrain from filing suit." *Redwing*, 363 S.W.3d at 461.[6]

---

*Trailer Source, Inc.)*, 555 F.3d 231, 242 (6th Cir. 2009) ("The Supreme Court has long recognized that bankruptcy courts are courts of equity with the power to apply flexible equitable remedies in bankruptcy proceedings.") Still, the possible availability of equitable tolling under Tennessee law does not mean that TDOR should prevail.

[6] The parties also dispute whether misrepresentation (not just representation) is required to prove equitable estoppel. But determining this issue is unnecessary given the facts here.

Here, TDOR claims that it reasonably relied upon the representation in the Plan that administrative expense claims, including taxes, would be paid, and that it had no reason to believe those taxes would not be paid. Collins contends that even if TDOR reasonably relied on the Plan, the Plan itself stated that administrative expense claims would be paid on the "effective date" of October 1, 2012. But when TDOR was not paid on the "effective date," TDOR failed to pursue its claims diligently by waiting to issue the levy for three years. Because of this lengthy delay in pursuing its claims, TDOR cannot now claim the protection of equitable estoppel.

## IV.

The bankruptcy court rejected Collins's argument that TDOR knowingly and intentionally violated the discharge injunction by levying the taxes at issue on debtor's bank account. The bankruptcy court explained that the taxes were not in fact discharged because Faye Foods prepared and filed tax returns but did not pay the taxes due; TDOR filed a proof of claim (labeled "POST PETITION PRIORITY TAX CLAIM") before the deadline for filing applications for administrative claims expired; and federal law requires payment of state taxes during the pendency of a bankruptcy case. As a result, TDOR's claim "should have been paid together with other administrative claims as provided in the Plan," but it was not discharged. 05-23072 Bankr Ct. 622, Order Denying Motion for Sanctions, Page 5. The court also rejected two other, threshold arguments advanced by Collins regarding the formalities of filing a proof of claim.[7]

---

[7] As he did in the bankruptcy court, Collins again argues on appeal that 11 U.S.C. § 503(b)(1)(D), which exempts government entities from the 11 U.S.C.§ 503(a) filing requirement, was enacted after the bankruptcy case was filed, so it does not apply. Because TDOR did not file an application or "request," Collins asserts, the tax debt was discharged. CA6 R. 25, Appellee Second Brief, Page ID 36. The bankruptcy court determined that even if 11 U.S.C. § 503(b)(1)(D) did not apply, TDOR's proof of claim survived. We agree. Even if 11 U.S.C. § 503(b)(1)(D) does not apply—meaning that TDOR would have been required to file an application or request for payment—TDOR's "POST-PETITION PRIORITY TAX CLAIM" was adequate because such applications need not conform to any specific requirements. There are no specific rules for what "requests" for payments or applications for allowance of administrative claims must include. 4 Collier on Bankruptcy ¶ 503.02 (16th ed. 2018) ("There is no Official Form for the filing of a request for payment of an administrative expense."). An administrative proof of claim, like the "POST-PETITION PRIORITY TAX CLAIM" TDOR filed, can constitute an application or "request" for payment of an

Collins then argued that sanctions should be imposed based on the bankruptcy court's equitable powers under 11 U.S.C. § 105(a). The bankruptcy court rejected this argument too, first on the merits by finding that TDOR had not engaged in any sanctionable conduct. Second, the court found that it lacked jurisdiction because there was no violation of the discharge injunction. All that remained was a dispute over the levying of taxes between the state of Tennessee and a taxpayer, which does not belong in federal bankruptcy court. *See* Tenn. Code Ann. § 67-1-1804 (giving Tennessee courts "sole and exclusive jurisdiction" for determining liability for state taxes).

The district court affirmed the denial of sanctions based on a violation of the discharge injunction for the same reasons as the bankruptcy court. As for the sanctions argument based on the bankruptcy court's equitable powers, the district court moved directly to the merits and decided that sanctions were not warranted based on the factual record, as Collins had not established bad faith, intentional abuse, or knowing disregard on TDOR's part.

We review the bankruptcy court's decision to deny sanctions for abuse of discretion. *See Maloof*, 316 F. App'x at 375 (collecting authority). Regarding the discharge injunction issue, the bankruptcy court explained that sanctions were not warranted because TDOR did not violate the discharge injunction, as the taxes were not discharged. We agree, for the reasons explained by the bankruptcy court. Furthermore, Collins again fails on appeal to establish bad faith, intentional abuse, or knowing disregard on TDOR's part. Accordingly, we affirm the bankruptcy court's denial of sanctions.

---

administrative claim. *Matter of Mansfield Tire & Rubber Co., Inc.*, 73 B.R. 735, 739 (Bankr. N.D. Ohio 1987) ("[A] written document, filed with the court, stating the nature and the amount of the claim, and evidencing an intent to hold the estate liable is sufficient to constitute a request for payment under Section 503 of the Bankruptcy Code."); *In re Fas Mart Convenience Stores, Inc.*, 320 B.R. 587, 594 (Bankr. E.D. Va. 2004) ("[T]o deny an administrative claim set forth in a proof of claim elevates form over substance.").

V.

For the reasons stated, we affirm the decision of the bankruptcy court.